### FRED A. EASTMAN *vs.* DAVID A. SCOTT & another.

Worcester.   September 29, 1902. — October 30, 1902.

Present: HOLMES, C. J., MORTON, LATHROP, BARKER, & LORING, JJ.

*Negligence*, Employer's liability.   *Animal.*

In an action for injuries from being kicked by a horse which the plaintiff was driving for the defendant there is no sufficient evidence that the defendant knew or ought to have known that the horse had a vicious habit of kicking, if it appears that the defendant had been in possession of the horse only a month and a half and that during that time the horse had only kicked once and then under such circumstances that the viciousness of the kick was only a conjecture.

From the facts that a horse of the defendant driven by the plaintiff in a laundry wagon switched his tail over the reins knocking them out of the plaintiff's hands and ran away kicking continuously until he hit the plaintiff on the leg it reasonably cannot be inferred that the horse before the accident had a vicious habit of kicking or that the defendant should be charged with a knowledge of such a habit.

TORT by the driver of a laundry wagon employed by the defendants for injuries from being kicked by a horse of the defendants which the plaintiff was driving, the declaration alleging

that the defendants negligently provided the plaintiff with a horse owned by them which had the vicious habit of kicking, a fact known or which ought to have been known by the defendants and of which the plaintiff was ignorant. Writ dated March 25, 1901.

At the trial in the Superior Court before *Gaskill*, J., it appeared, that the plaintiff was twenty-seven years old and had driven horses since he was sixteen years of age; that he first saw the horse that kicked him when the horse was brought to the defendants' barn about a month and a half before the accident; that the plaintiff drove the horse every day except Sundays for about two weeks before the accident, and he testified that he did not see that it was a dangerous horse and that it was a perfectly safe horse so far as he saw; that on the morning in question he was driving the horse in a covered laundry wagon with a foot board but no dasher; that he started at about six o'clock and drove around one route collecting laundry packages, returned to the laundry about seven o'clock, and then drove by permission to another place to get his breakfast; " that he turned around and started to finish his route collecting; that he got into the wagon and turned the horse around; that the next thing that happened, the horse switched his tail and struck the reins and knocked them out of his hands; that the next thing that happened, the horse began to kick both sides of the witness's head with both heels just as high as he could drive, that this continued until he struck the witness on the leg."

The evidence in regard to the previous conduct of the horse referred to by the court as being insufficient to charge the defendants with knowledge of viciousness of the horse was as follows: One William McLaren, called by the plaintiff, testified that he was a laundry driver and at and before the time of the accident was employed by the defendants as a stableman; that he knew the horse that kicked the plaintiff; that it kicked the witness before the time it kicked the plaintiff; that one afternoon when the witness was doing his work in the stable he went in to take out this horse to clean it off and groom it, and while unfastening the hitch strap that was behind " she kicked "; that the witness jumped back and " got the end of the foot in his watch "; that the same afternoon the witness had occasion to go

down to the laundry for hot water, and saw the defendant Scott; that he had a conversation with Scott, as follows: "I told him then that I got my watch knocked out, and he asked me how it was done, and I told him how he kicked me, and I told him the horse that done it, and that seemed to be about all he said."

The judge ordered a verdict for the defendants; and the plaintiff alleged exceptions.

*W. C. Mellish*, for the plaintiff.

*H. Parker, C. C. Milton & D. F. Gay*, for the defendants.

BARKER, J.   We think there was no sufficient evidence that up to the time of the accident the horse had a vicious habit of kicking or that the defendants knew or ought to have known that it had such a habit.

There is nothing from which to infer that they knew more about the habits of horses than the ordinary man in whose business the use of horses is a mere incident.   The animal had been in their possession but a month and a half, and had so far as appears never given but a single kick, and that in its stable and under circumstances from which to say that the kick was vicious is merely conjecture.   These facts distinguish the case from that of *Lynch* v. *Richardson*, 163 Mass. 160.   Assuming that the fact of the single kick in the stable was known to the defendants it was not enough to require the submission of the case to the jury. Nor can it reasonably be inferred from the conduct of the horse at the time of the accident and on subsequent occasions that it had the vicious habit before the accident nor that the defendants should be charged with knowledge at that time.

This view of the evidence makes it immaterial whether the plaintiff was hurt in the course of his employment or while using the horse for his own convenience merely.

*Exceptions overruled.*