HENRY T SOUTHWORTH & another *vs.* OLD COLONY & NEWPORT RAILWAY COMPANY.

The fact that a horse was frightened and not under the control of any one, at a time when it was struck by a railroad train on a highway crossing, is not conclusive, as matter of law, of such a want of care on the part of its owner as to defeat an action brought by him against the railroad corporation to recover for the injury as caused by their negligence.

Evidence that a servant, whom traders employed to deliver goods, upon stopping with his horse and wagon to deliver a parcel at a house from fifty to a hundred rods from a railroad crossing, left the horse unfastened for four or five minutes while he was in the house, knowing that it was not afraid of cars, and having used it for three or four months without ever hitching it or knowing it to start, is not conclusive, as matter of law, of a want of due care on his part; but the question is for the jury.

TORT for the killing of the plaintiffs' horse and injury of their wagon by a train of the defendants on a highway crossing of their railroad track in Dorchester, through their alleged negligence. Trial, and verdict for the defendants, in the superior court, before *Putnam*, J., who reported this case:

"Edson S. Hawes, a clerk of the plaintiffs, who were traders, testified that his duty was to deliver goods for his employers, and he was using the team for this purpose on the day of the injury; that the plaintiffs had owned the horse three or four months; that he stopped the team at the house of Peter Woodman, in Dorchester, to deliver a parcel, and left the horse standing at the door, unfastened; that he had been in the house four or five minutes, when his attention was called to the fact that the horse had started; that he ran after it, but could not stop it; that he followed it around a corner, and the horse ran down the street, and ran into the defendants' train, which was crossing the road at the moment, and struck against the engine or first passenger car, and was killed, and the wagon injured. He testified that he did not know what started the horse; that he never was accustomed to hitch it when he left it; that it was a good driving horse, and he had used it during three or four months, and had never hitched it, or known it to start before this time; that it was not afraid of cars; that the place where he stopped on the street was from fifty to one hundred rods from the railroad cross-

ing; that when he got out of the house the horse was ten rods from him, but gained on him very rapidly, and when he reached the track was twenty to thirty rods ahead; that the horse was frightened; that one man tried to stop it, but could not; that the flagman, who was stationed at the crossing, (there being no gate there,) seeing the horse coming, went up to meet the horse, and tried to stop it, and struck it once or twice over the head, neck and side with his flag, but in trying thus to stop it he only succeeded in turning it off from the middle of the road to and upon the sidewalk, and changing its gait into a trot; and the witness was of opinion that, if the flagman had not interfered, the horse would have gone clear of the cars and have crossed the road without striking the cars.

" On this evidence, which was all that the plaintiffs desired to offer on the question of due care on their part at the time of the accident, the judge ruled that as at the time of the accident the horse was frightened, and not under the control of any one, it was not the subject of any care whatever, and therefore the plaintiffs could not recover in this action, whatever negligence they might show on the part of the defendants; and directed a verdict for the defendants; to which ruling the plaintiffs' counsel excepted, and the case is now reported for the determination of the supreme judicial court."

*A. C. Clark*, for the plaintiffs.

*C. F. Choate*, for the defendants.

AMES, J. According to the well settled rule in cases of this kind, it was necessary for the plaintiffs to prove that on their part there was no negligence, or want of due and reasonable care, directly contributing to the injury, and that it was caused entirely by the want of such care on the part of the defendants. It was assumed by the learned judge at the trial, that the fact that the horse had escaped from his driver, and was running at large and not under the control of any one, was decisive against the plaintiffs' right to recover in this action, whatever negligence they might show on the part of the defendants. This is undoubtedly true in the case of actions against towns or cities, for injuries occasioned by a defect or want of repair in a highway. Under the

statute applicable to such cases, it must be made to appear that the defect or want of repair was the sole cause of the injury. The case of *Davis* v. *Dudley*, 4 Allen, 557, upon which the defendants rely, was a case of that kind. In that case, as in this, the horse had escaped from his driver and was running at large, and the court say that in such a state of facts " the plaintiff unavoidably failed to show the exercise of due care, because it was not, and could not have been, at that time exerted," and that the horse " was not the subject of any care whatever " at the moment of injury. The true ground of the decision, however, and the only ground on which it can stand, is not that the plaintiff was not in the exercise of due care, but that " the blind violence of the animal, acting without guidance or direction," contributed to the injury, and the defect in the highway was not the sole cause of it. It was not a question of due care on the plaintiff's part, but the true ground of defence was, that, even if without fault or negligence on the plaintiff's part, the horse had escaped or become wholly unmanageable, and that state of things was not produced by a defect in the highway, the town was not responsible, although the defect in the highway was also a cause of the injury. *Fogg* v. *Nahant*, 98 Mass. 578. *Titus* v. *Northbridge*, 97 Mass. 258, 265.

It appears to us that the question whether there was a want of due and reasonable care on the part of the plaintiffs, which contributed directly to the accident, should have been submitted to the jury. We cannot say, as matter of law, that to leave the horse unfastened, for the time and under the circumstances described in the report, was necessarily a want of due, reasonable and ordinary care. It was evidence having a tendency, and perhaps a strong tendency, to prove negligence, but it was at all events for the jury to consider. This they have had no opportunity to do, as the court directed a verdict for the defendants under the mistaken impression that the mere fact that the horse at the time of the accident was not under the control of any one was decisive upon the question of negligence. *Titcomb* v. *Fitchburg Railroad Co.* 12 Allen, 254. *Verdict set aside; new trial ordered.*