### HENRY L. STACEY *vs.* HAVERHILL, GEORGETOWN & DANVERS STREET RAILWAY COMPANY.

Essex.   January 4, 1906. — April 3, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & SHELDON, JJ.

*Negligence.*

If a grocer with a horse and delivery wagon, who sometimes uses a weight to hitch his horse, leaves him without a weight or other fastening standing by the side of a street in which he knows that a street car soon is due, and then goes into a house to take orders and remains there ten minutes, and in the meantime the horse wanders across the street and grazes upon some trees with the wagon upon the track of the street railway, and the expected car coming at a high rate of speed destroys the wagon and kills the horse, the grocer cannot recover from the railway company for his loss of property even if its servants were negligent, not being able to sustain the burden of showing that he was in the exercise of due care.

TORT by a grocer for the killing of his horse and the destruction of his delivery wagon by an electric car of the defendant through the alleged negligence of the defendant's servants on the morning of September 8, 1902, on the northerly side of Salem Street, a highway running from Haverhill to the village of South Groveland, while the plaintiff was taking orders and delivering groceries to customers on Salem Street. Writ dated October 11, 1902.

At the trial in the Superior Court before *De Courcy,* J. the plaintiff's evidence tended to show that he was driving in an ordinary delivery wagon a horse which was kind, easily managed and not afraid of the cars ; that he left his horse unhitched on the southerly side of Salem Street in front of a house of a customer, which he entered for the purpose of taking orders ; that he sometimes used a weight ; that he remained in this house about ten minutes, during which time he did nothing with reference to the horse, nor did he see the horse ; that while he was in the house the horse walked across the road to the northerly side, and across the track of the defendant, where he proceeded to graze just below the driveway upon the premises of one Horne ; that he never knew the horse to move before ; that the hind wheels and the rear portion of the body of the wagon were upon the track of the defendant while the horse was standing and feeding from a tree, grazing ; that a car of the defendant was due to pass at that point shortly after the plaintiff entered the house ; that the plaintiff knew that the cars of the defendant passed that point every half hour ; that the track for some distance toward Haverhill, from whence the car came, was curved and on a down grade but the motorman had an opportunity to see the plaintiff's wagon at a distance of three hundred feet before reaching the place of collision ; that the car continued over this distance at a considerable rate of speed, one witness saying that he held on to his seat and told the conductor that the car was going too fast ; that the car struck the wagon and ran a distance of eighty feet or two car lengths beyond the point of collision ; that the horse of the plaintiff was killed and the wagon demolished.

One of the passengers on the car testified that he saw the plaintiff's team while the car was passing a pole three hundred

feet before reaching the place of the accident. The motorman, called by the defendant, testified that he saw the wagon on the track while the car was approaching on the curve a distance of two hundred and fifty feet from the place of the accident; that he did all that he could to stop the car after he saw the wagon on the track; but that the car was going so fast that he could not stop it before it struck the wagon.

The defendant asked the judge to rule that the plaintiff could not recover. The judge refused to rule as requested, and submitted the case to the jury. The jury returned a verdict for the plaintiff in the sum of $325; and the defendant alleged exceptions.

*C. H. Poor & E. B. Fuller*, for the defendant.

*J. J. Ryan*, for the plaintiff.

LATHROP, J. If we assume in favor of the plaintiff that there was some evidence of negligence on the part of the defendant's motorman in not stopping the car sooner than he did, we are of opinion that the plaintiff did not sustain the burden of proof, which was upon him, of showing that he himself was in the exercise of due care, in leaving the horse unfastened in any way for ten minutes by the side of a street when he knew that a car was about due. The plaintiff sometimes used a weight, and it is evident that if one had been used in this case the accident might not have happened. While there was evidence that the horse was kind, easily managed and not afraid of cars, yet the accident was caused not by the horse being frightened, but by his wandering across the street and the track of the defendant, and grazing upon some trees, leaving the wagon upon the track. During the ten minutes while the plaintiff was absent, he remained in a house, during which time he did nothing with reference to the horse, nor did he see the horse.

The case differs from *Southworth* v. *Old Colony & Newport Railway*, 105 Mass. 342, upon which the plaintiff chiefly relies. In that case the driver was not accustomed to hitch his horse, and was absent only four or five minutes. The street where he left the horse was not one where cars were passing. The railroad crossing was on another street, and from fifty to one hundred rods distant from the place where the horse was left.

We do not intend to decide that momentarily leaving a horse

unhitched upon a street, is negligence as a matter of law; but we are of opinion that under the circumstances of the case before us, the instruction requested should have been given.

*Exceptions sustained.*